BOBBY L. SKINNER, ADMINISTRATOR OF THE ESTATES OF BEVERLY KAY SKINNER, Deceased, and SANDRA GAIL SKINNER, Deceased v. JOHN L. WHITLEY, ADMINISTRATOR OF THE ESTATE OF CLYDE WESLEY SKINNER, Deceased

No. 97

(Filed 16 June 1972)

1. Death § 3— wrongful death action — statutes

A right of action for wrongful death exists only by virtue of G.S. 28-173 and G.S. 28-174.

2. Parent and Child § 2— wrongful death of child — action against deceased parent's administrator

The administrator of an unemancipated minor child may not bring an action against the administrator of its father for damages for the wrongful death of such child caused by the ordinary negligence of the deceased father in the operation of an automobile.

PLAINTIFF appeals from judgment of *Cowper, J.,* 16 November 1971 Civil Session, WILSON Superior Court.

On 26 April 1970 the motor vehicle owned and operated by Clyde Wesley Skinner, deceased, along Highway 264 west of Wilson, North Carolina, skidded into the path of an oncoming motor vehicle. The collision resulted in the death of Clyde Wes-

Skinner v. Whitley

ley Skinner and his two daughters, Sandra Gail Skinner and Beverly Kay Skinner. This action is brought by the administrator of the estates of the two deceased daughters against the administrator of the estate of their deceased father.

Plaintiff administrator alleges that Clyde Wesley Skinner, deceased, was negligent in that he operated his motor vehicle at an excessive speed, failed to keep it under control, drove it with worn and defective tires which he knew would be unsafe, and operated his vehicle without due caution and circumspection and in a manner likely to endanger others. Plaintiff alleges that the negligence of defendant's intestate was the proximate cause of the death of Beverly Kay Skinner and Sandra Gail Skinner, seventeen and thirteen years of age respectively. Plaintiff demands judgment against defendant in the sum of $80,000 and cost of the action.

In his answer the defendant John L. Whitley, Administrator, denies all allegations of negligence on the part of Clyde Wesley Skinner, deceased, and further pleads, among other things, that plaintiff cannot legally prosecute this action against defendant by reason of the admitted parent-child relationship between Clyde Wesley Skinner and his daughters Beverly Kay Skinner and Sandra Gail Skinner.

In response to defendant's request for admission of facts, plaintiff admitted that Beverly Kay Skinner and Sandra Gail Skinner were the natural daughters of Kathleen Skinner (their mother) and defendant's intestate, Clyde Wesley Skinner (their father), and that said daughters lived in the home of their parents and under their care, custody, supervision and control until the time of the automobile accident which resulted in the deaths of plaintiff's intestates and defendant's intestate.

The defendant moved for summary judgment under Rule 56(b) of the Rules of Civil Procedure, and the trial court, being of the opinion that the deceased unemancipated minor children, had they lived, could not have maintained an action for damages against their father or his personal representative as a matter of law and therefore plaintiff administrator is not entitled to maintain this action, allowed the motion and dismissed the action. Plaintiff appealed to the Court of Appeals, petitioned this Court to certify the cause for initial appellate review by the Supreme Court, and the petition was allowed.

*Narron, Holdford and Babb by Henry C. Babb, Jr., Attorneys for plaintiff appellant.*

*Lucas, Rand, Rose, Meyer, Jones & Orcutt by Louis B. Meyer, Attorneys for defendant appellee.*

HUSKINS, Justice.

May the administrator of an unemancipated minor child bring an action against the administrator of its father for damages for the wrongful death of such child caused by the ordinary negligence of the deceased father? Answer to this question determines this appeal.

[1] A right of action for wrongful death did not exist at common law. *Broadnax v. Broadnax,* 160 N.C. 432, 76 S.E. 216 (1912). In North Carolina such right of action is conferred by statute and exists only by virtue of G.S. 28-173 and G.S. 28-174. *Horney v. Pool Co.,* 267 N.C. 521, 148 S.E. 2d 554 (1966); *Graves v. Welborn,* 260 N.C. 688, 133 S.E. 2d 761 (1963). Under these statutes the personal representative of a deceased person has a right of action only when the death of his intestate is caused by the wrongful act, neglect or default of another, "such as would, if the injured party had lived, have entitled him to an action for damages therefor." G.S. 28-173; *Lewis v. Insurance Co.,* 243 N.C. 55, 89 S.E. 2d 788 (1955).

In North Carolina and the great majority of other states, the rule is that "an unemancipated minor child cannot maintain a tort action against his parent for personal injuries, even though the parent's liability is covered by liability insurance. This rule implements a public policy protecting family unity, domestic serenity, and parental discipline. . . . Upon the same theory, an overwhelming majority of jurisdictions likewise hold that neither a parent nor his personal representative can sue an unemancipated minor child for a personal tort. . . . 'The child's immunity is said to be reciprocal of the parent's immunity.'" *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753 (1965).

[2] Therefore, under the foregoing legal principles, the unemancipated minor daughters of Clyde Wesley Skinner, had they lived, could not have maintained an action against their father to recover damages for injuries caused by his ordinary negligence. *Watson v. Nichols,* 270 N.C. 733, 155 S.E. 2d 154 (1967);

*Redding v. Redding,* 235 N.C. 638, 70 S.E. 2d 676 (1952);
*Small v. Morrison,* 185 N.C. 577, 118 S.E. 12 (1923); Annot.,
19 A.L.R. 2d 423. Having died as a result of their injuries, their
personal representative could not have maintained an action
for their wrongful death against their father had he survived
the accident. *Capps v. Smith,* 263 N.C. 120, 139 S.E. 2d 19
(1964); *Lewis v. Insurance Co., supra; Goldsmith v. Samet,*
201 N.C. 574, 160 S.E. 835 (1931). Their father having also died
as a result of the accident, the personal representative of these
children cannot maintain this wrongful death action against
their father's personal representative. *Cox v. Shaw,* 263 N.C.
361, 139 S.E. 2d 676 (1965). This conclusion follows as a matter
of law unless the reciprocal immunity rule between parent and
unemancipated minor child is repudiated or modified in this
jurisdiction.

Plaintiff concedes the law to be as above outlined but urges
us to abandon the parent-child immunity doctrine in North Car-
olina and allow the minor children of this State "to plead their
wrongs at her altar" of justice. Plaintiff argues that the ration-
ale for the immunity rule—the maintenance of family harmony
and parental discipline—cannot be applied to the facts here
since, by reason of the death of the daughters and their father,
there no longer exists a parent-child or other family relationship
that may be disturbed by this action. For this reason plaintiff
contends the immunity doctrine has no application and, should
we decline to abrogate the doctrine completely, we should refuse
to apply it to the facts of this case.

The doctrine of parental immunity in this country origi-
nated with *Hewlett v. George,* 68 Miss. 703, 9 So. 885 (1891),
in which it was held that a daughter could not sue the estate
of her deceased mother for damages resulting from the wrongful
commitment of the daughter to an insane asylum. The immunity
rule was expressed by the Mississippi Court in the following lan-
guage: "[S]o long as the parent is under obligation to care for,
guide, and control, and the child is under reciprocal obligation
to aid and comfort and obey, no such action as this can be
maintained. The peace of society, and of the families composing
society, and sound public policy, designed to subserve the repose
of families and the best interests of society, forbid to the minor
child a right to appear in court in the assertion of a claim to
civil redress for personal injuries suffered at the hands of

the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand."

*Hewlett* was followed by *McKelvey v. McKelvey,* 111 Tenn. 388, 77 S.W. 664 (1903), in which a child sued for damages for cruel and inhuman treatment allegedly inflicted upon her by her stepmother with the consent and approval of her father. It was held that such action could not be maintained. Two years later the Supreme Court of Washington held that a daughter could not sue her father for damages for raping her because "there is no practical line of demarcation which can be drawn, for the same principle which would allow the action in the case of a heinous crime, like the one involved in this case, would allow an action to be brought for any other tort." *Roller v. Roller,* 37 Wash. 242, 79 P. 788 (1905). Other states consistently adopted the rule announced in these cases, and in due course practically all the states of the Union had joined the parental immunity club. *See* Parental Immunity: Mississippi's Gift to the American Family, 7 Wake Forest L. Rev. 597 at 602, fn. 27, where cases are listed from more than forty states. See also cases collected at 19 A.L.R. 2d 423 (1951).

An examination of cases applying the parental immunity doctrine reveals five policy reasons primarily relied on to support it: (1) disturbance of domestic tranquility, (2) danger of fraud and collusion, (3) depletion of the family exchequer, (4) the possibility of inheritance, by the parent, of the amount recovered in damages by the child, and (5) interference with parental care, discipline and control. However, domestic tranquility and the discipline and control of the family's children are the policy reasons most frequently offered.

Insofar as our research discloses, no state has totally abrogated parental immunity. However, a growing minority of states have reexamined and modified the doctrine. Such modifications are expressed as exceptions to the immunity rule. Some courts hold that where death has terminated the parent-child relation there is no longer any basis for applying the parental immunity rule. *Dean v. Smith,* 106 N.H. 314, 211 A. 2d 410 (1965) ; *Brennecke v. Kilpatrick,* 336 S.W. 2d 68 (Mo. 1960) ; *Hale v. Hale,* 312 Ky. 867, 230 S.W. 2d 610 (1950). *Compare Bank v. Hackney,* 266 N.C. 17, 145 S.E. 2d 352 (1965) (administrator of the wife's estate may sue the estate

of the husband for damages for wrongful death even though the recovery will be distributed to the surviving minor children.) There is no uniformity, however, with respect to this exception. Many jurisdictions still apply the immunity rule even though the parent or child may be dead. *Durham v. Durham,* 227 Miss. 76, 85 So. 2d 807 (1956) ; *Owens v. Auto Mut. Indemnity Co.,* 235 Ala. 9, 177 So. 133 (1937).

Outrageous conduct on the part of the parent which invades the child's rights and brings discord into the family has been held sufficient to lift the immunity. *Oldman v. Bartshe,* 480 P. 2d 99 (Wyo. 1971) ; *Hoffman v. Tracy,* 67 Wash. 2d 31, 406 P. 2d 323 (1965) ; *Mahnke v. Moore,* 197 Md. 61, 77 A. 2d 923 (1951).

Willful and intentional injury of the child has been held to terminate the parent-child relation and thus avoid application of the parental immunity rule. *Rodebaugh v. Grand Trunk Western Railway Co.,* 4 Mich. App. 559, 145 N.W. 2d 401 (1966) ; *Cowgill v. Boock,* 189 Ore. 282, 218 P. 2d 445 (1959) ; *Nudd v. Matsoukas,* 7 Ill. 2d 608, 131 N.E. 2d 525 (1956) ; *Emery v. Emery,* 45 Cal. 2d 421, 289 P. 2d 218 (1955) ; *Aboussie v. Aboussie,* 270 S.W. 2d 636 (Tex. 1954) ; *Wright v. Wright,* 85 Ga. App. 721, 70 S.E. 2d 152 (1952).

Where a dual relationship exists between parent and child, such as master and servant or carrier and passenger, the domestic relationship has been described as merely incidental, affording no immunity. *Teramano v. Teramano,* 6 Ohio St. 2d 117, 216 N.E. 2d 375 (1966) ; *Trevarton v. Trevarton,* 151 Colo. 418, 378 P. 2d 640 (1963) ; *Signs v. Signs,* 156 Ohio St. 566, 103 N.E. 2d 743 (1952) ; *Borst v. Borst,* 41 Wash. 2d 642, 251 P. 2d 149 (1952) ; *Worrell v. Worrell,* 174 Va. 11, 4 S.E. 2d 343 (1939) ; *Lusk v. Lusk,* 113 W.Va. 17, 166 S.E. 538 (1932) ; *Dunlap v. Dunlap,* 84 N.H. 352, 150 A. 905 (1930).

Where the child is injured by the negligence of the parent while the parent is acting within the scope of his employment, it has been held that an infant may recover from the parent's employer on the principle of *respondeat superior.* It is said that immunity to suit for tort is personal to the parent and cannot be asserted by the employer. *Stapleton v. Stapleton,* 85 Ga. App. 728, 70 S.E. 2d 156 (1952) ; *Foy v. Electric Co.,* 231 N.C. 161, 56 S.E. 2d 418 (1949) ; *Wright v. Wright,* 229 N.C.

503, 50 S.E. 2d 540 (1948) ; *Mi-Lady Cleaners v. McDaniel*, 235 Ala. 469, 179 So. 908 (1938) ; *O'Connor v. Benson Coal Co.*, 301 Mass. 145, 16 N.E. 2d 636 (1938) ; 59 Am. Jur. 2d, Parent and Child, § 162; 1 A.L.R. 3d 677, 702, § 9 (1965). Other courts have held to the contrary, applying parental immunity. See 1 A.L.R. 3d 677, 700, § 8 (1965), where the cases are collected.

In *Goller v. White*, 20 Wis. 2d 402, 122 N.W. 2d 193 (1963), Wisconsin abrogated the parental immunity rule except in the following situations: "(1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." Wisconsin's solution to the problem has been substantially followed in *Silesky v. Kelman*, 281 Minn. 431, 161 N.W. 2d 631 (1968) ; *Schenk v. Schenk*, 100 Ill. App. 2d 199, 241 N.E. 2d 12 (1968) ; *Streenz v. Streenz*, 106 Ariz. 86, 471 P. 2d 282 (1970) ; *Rigdon v. Rigdon*, 465 S.W. 2d 921 (Ky. 1971).

Several states have abrogated the immunity rule to allow a child to sue his parent for damages for injuries caused by the negligent operation of a motor vehicle. *Johnson v. Myers*, 2 Ill. App. 3d 844, 277 N.E. 2d 778 (1972) ; *Falco v. Pados*, 444 Pa. 372, 282 A. 2d 351 (1971) ; *Smith v. Kauffman*, 212 Va. 181, 183 S.E. 2d 190 (1971) ; *Gelbman v. Gelbman*, 23 N.Y. 2d 434, 245 N.E. 2d 192 (1969) ; *Hebel v. Hebel*, 435 P. 2d 8 (Alaska 1967) ; *Nuelle v. Wells*, 154 N.W. 2d 364 (N.D. 1967) ; *Briere v. Briere*, 107 N.H. 432, 224 A. 2d 588 (1966) ; *Balts v. Balts*, 273 Minn. 419, 142 N.W. 2d 66 (1966).

For more extreme departures from the parental immunity rule, see *Gibson v. Gibson*, 3 Cal. 3d 914, 479 P. 2d 648 (1971) ; and *Petersen v. City and County of Honolulu*, 51 Hawaii, 484, 462 P. 2d 1007 (1970).

Despite the foregoing exceptions and modifications, a great majority of jurisdictions still hold that an unemancipated minor cannot maintain an action against his parent for ordinary negligence. 59 Am. Jur. 2d, Parent and Child, § 152.

The foregoing discussion illustrates the troublesome difficulties encountered by those who seek to modify, but not repudiate, the parent-child immunity rule. Generally speaking, all seem to agree that the immunity of a parent for torts com-

mitted in and around the home by acts involving an exercise of parental authority or involving ordinary parental discretion should be maintained, but recovery should be allowed under a variety of circumstances for torts committed elsewhere.

Plaintiff in this case urges us to reverse precedents of long standing in order to eliminate immunity in one particular class of cases involving ordinary negligence in the operation of a motor vehicle. Plaintiff does not suggest the scope of such an exception to the immunity rule, but obviously it would encompass any number of alternatives: (1) all injuries arising out of the negligent operation of a motor vehicle; (2) only cases in which the negligent parent was killed and his child injured and (a) the parent had liability insurance or (b) regardless of liability insurance; or (3) only cases in which both parent and child are killed by the parent's negligence and (a) the parent had liability insurance or (b) regardless of liability insurance. Of course there are other alternatives.

Regardless of the alternative adopted, the course plaintiff urges would create more problems and inequities than it cures. If suit is allowed only in motor vehicle cases, by what logic is the right to sue denied for injury to the child incurred by the parent's negligence in operating a golf cart or a motor boat or a lawn mower or a power saw? If suit is allowed only in motor vehicle cases in which either the child or parent or both are killed by the negligent parent, what justification is there for the discrimination thus created between the injured child whose parent died, as distinguished from the injured child whose parent survived, the accident? Both reason and common sense dictate that an unemancipated child's right to sue its parent should not be contingent upon the death of the parent or the child.

Moreover, conditioning the right to sue upon the existence of liability insurance is equally tenuous. Such a rule would not only extend existing insurance contracts to coverage not contemplated when the policies were written but also would create a preferred class of minor unemancipated children—those injured in a motor vehicle accident by a negligent father who carried liability insurance. We have heretofore held that the existence of liability insurance is not a valid reason to abolish the immunity doctrine. *Gillikin v. Burbage, supra; Small v. Morrison, supra;* 3 Lee, North Carolina Family Law, § 248 (1963).

Yet total abrogation of the immunity rule would lead to judicial supervision over the conduct of parent and child in the ordinary operation of the household. This should never be done so long as the law imposes on the parents the duty and obligation to support, control and discipline their children.

Piecemeal abrogation of established law by judicial decree is, like a partial amputation, ordinarily unwise and usually unsuccessful. When the question of parental immunity was first presented to this Court nearly fifty years ago in *Small v. Morrison, supra* [185 N.C. 577, 118 S.E. 12, 31 A.L.R. 1135 (1923)], we expressed the view that the government of the home was the surest bulwark against social disorder and civic decay. We based the immunity rule on the basic principle that parents and unemancipated children in the home constitute a social unit different from all other groups so as to make suits by the one against the other for negligent injury most unseemly and productive of great mischief. Our decision there was grounded on considerations of broad public policy, and in our view those considerations still outweigh the arguments for change in cases involving ordinary negligence resulting in unintended personal injury or death. Of course, the question raised by an intentional, willful or malicious tort inflicted on a child by a parent or person *in loco parentis* is not presented on this appeal. We will pass on that question when it arises in a case properly before us.

If the immunity rule in ordinary negligence cases is no longer suited to the times, as some decisions suggest, we think innovations upon the established law in this field should be accomplished *prospectively* by legislation rather than *retroactively* by judicial decree. Such changes may be accomplished more appropriately by legislation defining the areas of non-immunity and imposing such safeguards as may be deemed proper. Certainly that course is much preferred over judicial piecemeal changes in a case-by-case approach. A similar conclusion has been reached by others. "The simplest way to effectuate a change in the law is to enact a statute doing so. The courts have frequently said that the question of public policy is to be determined by the legislature and not by the court." 3 Lee, North Carolina Family Law, § 248. *Accord, Downs v. Poulin,* 216 A. 2d 29 (Me. 1966) ; *Castellucci v. Castellucci,* 94 R.I. 34, 188 A. 2d 467 (1963).

For the reasons stated, defendant's motion for summary judgment was properly allowed. The judgment of the trial court must therefore be upheld.

Affirmed.