JENNIFER LEE, BY HER GUARDIAN AD LITEM, E. S. SCHLOSSER, JR., PLAINTIFF v. MOWETT SALES COMPANY, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF v. KYU C. LEE, THIRD-PARTY DEFENDANT

No. 8518SC37

(Filed 17 September 1985)

1. Parent and Child § 2.1— riding lawnmower not motor vehicle — parent-child immunity — action for contribution against parent barred

A riding lawnmower is not a "motor vehicle" within the meaning of G.S. 1-539.21, the statute creating an exception to the doctrine of parent-child immunity for tort actions arising out of the operation of motor vehicles. Therefore, in an action against the manufacturer and seller of a lawnmower to

Lee v. Mowett Sales Co.

recover for injuries received by the minor plaintiff when she was struck by the blade of a riding lawnmower operated by her father, the doctrine of parent-child immunity barred the manufacturer's third-party action against the father for contribution based on an allegation that his negligent operation of the lawnmower was one of the proximate causes of the minor plaintiff's injuries.

**2. Parent and Child § 2.1— doctrine of parental immunity—no judicial expansion**

The Court of Appeals will not judicially expand the limited statutory exception to the doctrine of parental immunity by providing unemancipated minors with a right to maintain an action for personal injury against their parents in all cases where the injury does not arise from a negligent act involving the exercise of parental authority or discretion.

Judge BECTON dissenting.

APPEAL by Defendant and Third-Party Plaintiff, Mowett Sales Company, Inc., from *Washington, Judge.* Order entered 15 October 1984 in Superior Court, GUILFORD County. Heard in the Court of Appeals 27 August 1985.

This civil action was brought on behalf of the minor plaintiff, Jennifer Lee, to recover damages for personal injuries which she received as a result of being struck by the moving blade of a riding lawnmower operated by her father. The minor plaintiff alleged negligence and breach of warranties by defendants, Mowett Sales Company, Inc. (Mowett), the manufacturer of the lawnmower, and Lowe's of N. C. (Lowe's), the seller. Mowett answered, denying fault, and filed a third-party complaint against the minor plaintiff's father, Kyu C. Lee, alleging that his negligent operation of the lawnmower was at least one of the proximate causes of the minor plaintiff's injuries and seeking contribution for any damages which she might recover.

The third-party defendant, Kyu C. Lee, moved to dismiss the third-party complaint of Mowett on the grounds that it was barred by the doctrine of parent-child immunity. The trial court dismissed the third-party complaint for failure to state a claim upon which relief could be granted and further ordered, pursuant to G.S. 1A-1, Rule 54(b), that the order be entered as a final judgment. Mowett appealed.

*Nichols, Caffrey, Hill, Evans & Murrelle, by Karl N. Hill, Jr. and Clyde H. Jarrett, for defendant and third-party plaintiff appellant.*

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Daniel W. Fouts and Margaret E. Shea, for third-party defendant appellee.*

Lee v. Mowett Sales Co.

MARTIN, Judge.

**[1]** Defendant and third-party plaintiff Mowett Sales Company, Inc. asserts on appeal that the trial court incorrectly relied upon the doctrine of parent-child immunity in dismissing the third-party complaint. Since, under present North Carolina law, parental immunity would have barred a personal injury action brought by the minor plaintiff directly against her father, it also bars this action by a third party to recover contribution from the father for inujuries to his minor child. We affirm the order dismissing the third-party action.

It is the general rule in North Carolina that unemancipated minors may not maintain an action against their parents to recover damages for an unintentional tort. *Skinner v. Whitley,* 281 N.C. 476, 189 S.E. 2d 230 (1972); *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753 (1965); *Small v. Morrison,* 185 N.C. 577, 118 S.E. 12 (1923). Since the parent cannot be held liable in a direct action against him by the injured child, a third-party may not maintain an action against the parent, based on allegations of joint negligence, to recover contribution for damages awarded to the minor. *Watson v. Nichols,* 270 N.C. 733, 155 S.E. 2d 154 (1967).

By the enactment of G.S. 1-539.21, the legislature created a limited exception to the common law doctrine of parent-child immunity in North Carolina. G.S. 1-539.21 provides:

> The relationship of parent and child shall not bar the right of action by a minor child against a parent for personal injury or property damage arising out of the *operation of a motor vehicle* owned or operated by such parent.

(Emphasis added.) This statutory exception applies solely to tort actions arising out of the operation of motor vehicles. We do not believe that a riding lawnmower is a "motor vehicle" within the meaning of G.S. 1-539.21 and therefore hold that the limited statutory exception created thereby does not apply to this case.

**[2]** Mowett concedes the North Carolina rule to be as stated above but, citing the trend in other jurisdictions toward abrogation of the doctrine of parent-child immunity, urges that we judicially expand the limited statutory exception to the doctrine by providing unemancipated minors with a right to maintain an action for personal injury against their parents in all cases where

the injury does not arise from a negligent act involving the exercise of parental authority or discretion. Our responsibility, however, is to follow the decisions of the Supreme Court of North Carolina; those decisions continue to recognize the common law doctrine of parental immunity except as abrogated by G.S. 1-539.21. *See e.g., Carver v. Carver*, 310 N.C. 669, 314 S.E. 2d 739 (1984); *Gillikin v. Burbage, supra.* Moreover, as stated by Justice Huskins in *Skinner v. Whitley, supra,* in response to a similar argument:

> If the immunity rule in ordinary negligence cases is no longer suited to the times, as some decisions suggest, we think innovations upon the established law in this field should be accomplished *prospectively* by legislation rather than *retroactively* by judicial decree. Such changes may be accomplished more appropriately by legislation defining the areas of non-immunity and imposing such safeguards as may be deemed proper. Certainly that course is much preferred over judicial piecemeal changes in a case-by-case approach.

*Id.* at 484, 189 S.E. 2d at 235.

Affirmed.

Judge WEBB concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

While mindful of the legal precedent in this State and the role of the Supreme Court as the final authority on the interpretation of state law, I believe the issue presented in this appeal has not been fully or adequately addressed in light of the trend in the modern jurisprudence of parental immunity. The current state of the law in North Carolina is succinctly and accurately reflected by the majority. And although the law may not be in a constant state of flux, variations in facts and circumstances or the changing times sometimes prompt courts to reverse themselves. Because the issue is ripe for Supreme Court review, because I believe the courts in this State have the authority and obligation to modify or abolish inequitable and outdated judicial doctrines

when the need arises, and because, in my view, the need has arisen, I dissent.

The doctrine of parental immunity from liability for negligence causing injury to a child is purely a creation of American courts. Prosser and Keeton on the Law of Torts Sec. 122 (W. Keeton 5th ed. 1984); 1 Harper & James, Law of Torts Sec. 8.11 (1956). The doctrine took root in 1891, *see Hewlett v. George*, 68 Miss. 703, 9 So. 885, and spread to North Carolina in 1923, *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12. In *Small*, the Supreme Court relied upon the early American cases, *Hewlett*, *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S.W. 664 (1903), and *Roller v. Roller*, 37 Wash. 242, 79 P. 788 (1905), and held that no action in negligence would lie between an injured unemancipated child and her father. The majority also held that no cause of action could be maintained against the father's insurer, although Chief Justice Clark dissented from this ruling. The decision in *Small* was grounded squarely in "practical considerations of public policy, which discourage causes of action that tend to destroy parental authority and to undermine the security of the home." 185 N.C. at 584, 118 S.E. at 15. The Court continued:

> To permit a minor child to sue its father for a tortious wrong would be to allow the child to take from its parent that which is already dedicated to its support and maintenance; because the law says that a parent must provide, according to his means, for the support, care, and maintenance of his minor children. It would also allow one minor child to gain an advantage over his minor brothers and sisters at the expense of the common fund which has been dedicated to a fair and equal support of them all. And further, even taking the plaintiff's view, a suit would do no more than award to the injured child that which the simple dictates of family life have already impressed with a trust in its favor. In this respect, it is permissible to observe that generosity is not a stranger to a willing hand, but it is to a forced one.

*Id.* at 585, 118 S.E. at 15.

The policies originally advanced in support of parental immunity no longer justify the doctrine for most purposes.

In light of the ever-increasing criticism of the general rule that an action for personal injuries cannot be maintained

between parent and child, and the growing number of excep-
tions to the rule, it seems that the time has arrived for its
abolishment. We should frankly recognize that the earlier
cases were wrongly decided. The reasons therein stated are
no longer convincing.

3 Lee, North Carolina Family Law Sec. 248, at 298 (1981) (footnote
omitted) (extensively reviewing the current problems with the
parental immunity rule in this State). For example, the argument
that there should be no action by a child against her parent for
personal injuries because it would disrupt the domestic tranquili-
ty of the home is deeply flawed. Why should this rationale bar ac-
tions for personal torts but not for property damage, trespass to
land or contract actions? We allow a child to sue his parent's
employer on a respondeat superior theory. *Wright v. Wright*, 229
N.C. 503, 50 S.E. 2d 540 (1948). Would this not engender discord in
the family of a parent whose employer is forced to pay for the
parent's negligence in the course of employment? "It can hardly
aid family reconciliation to deny an injured child access to the
courts and, through them, to any liability insurance which the
family might maintain." *Nocktonic v. Nocktonic*, 227 Kan. 758, 611
P. 2d 135 (1980) (rejecting parental immunity in automobile
negligence cases).

It has been asserted that N.C. Gen. Stat. Sec. 1-539.21 (1983)
is a justifiable exception to the parental immunity rule because,
under this State's compulsory automobile insurance rules, parents
are necessarily insured and domestic tranquility is not jeopard-
ized by a child's suit. This argument fails because nothing in the
statute limits recovery against a parent to the limits of the
parent's insurance coverage. Thus, the statute allows a child to
sue a parent for an amount greater than that covered by in-
surance. To this extent, the legislature has rejected the policies
underlying the parental immunity rule.

Moreover, a moment's reflection casts the concern for domes-
tic tranquility in a different light. No doubt the vast number of
potential negligence actions by children against their parents
never surface because of the presence of sufficient domestic tran-
quility. It is those cases in which such tranquility is absent, or in-
deed is not jeopardized because of the availability of liability
insurance, that children sue their parents. Certainly in these

cases, there is no reason to propagate a policy of favoring negligent parents and their insurers over injured children. It is for this same reason that we should reject the related argument that allowing one injured child to recover depletes the family resources at the expense of other children. *See generally* Restatement (Second) of Torts Sec. 895G, comment c, at 427 (1979). After all, one parent may sue the other, N.C. Gen. Stat. Sec. 52-5 (1984), but a child cannot sue a parent even when the child is injured in the same accident. *See Prosser, supra,* Sec. 122 (this situation creates the "height of inconsistency") (citing *Redding v. Redding,* 235 N.C. 638, 70 S.E. 2d 676 (1952) ); *see also Watson v. Nichols,* 270 N.C. 733, 735, 155 S.E. 2d 154, 156-57 (1967) (in dicta) (siblings may be able to sue each other).

The argument that abolishing parental immunity would open the door to insurance fraud is, at best, a secondary concern. The potential for fraud and collusion exists in all litigation and does not justify precluding the cause of action for an injured child. The proper forum for a determination of the extent of an allegedly negligent parent's collusion is a trial court with its rules for impeachment by cross-examination.

The assertion that allowing a child to recover against a negligent parent potentially allows the parent to profit from his own negligent wrongdoing by inheritance is a specious argument because we already allow children to recover for the *intentional* wrongdoing of their parents.

The final justification for the parental immunity doctrine is that we must not interfere with the parents' right to maintain their authority and exercise their discretion. This is a valid reason to preserve parental immunity, at least in situations in which this policy is implicated. Each of three modern standards for the limited applicability of parental immunity recognizes and implements this policy of respecting the discretionary parental domain. Each of these standards is briefly noted below and, I believe, should be weighed and considered by the Supreme Court or the legislature or both.

Several states have adopted the well-reasoned approach taken by the Wisconsin Supreme Court in *Goller v. White,* 20 Wis. 2d 402, 122 N.W. 2d 193 (1963). Parental immunity was abolished except in two situations:

(1) Where the alleged negligent act involves an exercise of parental authority over the child; and

(2) Where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

*Id.* at 413, 122 N.W. 2d at 198; *see* Restatement, *supra,* Sec. 895G comment j, at 430.

A second approach was adopted by the California Supreme Court in *Gibson v. Gibson,* 3 Cal. 3d 914, 92 Cal. Rptr. 288, 479 P. 2d 648 (1971). The standard in California is now: "what would an ordinarily reasonable and prudent *parent* have done in similar circumstances?" *Id.* at 921, 92 Cal. Rptr. at 293, 479 P. 2d at 653.

The third approach mentioned here is that offered by the American Law Institute in the Restatement (Second) of Torts Sec. 895G:

(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.

(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or not tortious.

The Restatement's commentaries are especially appropriate today, six years after their publication, because the trend identified in 1979 continues to gain adherents:

Constant criticism of the immunity has led to its erosion by the development of numerous exceptions to it, which have been more or less sporadically recognized by many courts, until there are now very few jurisdictions if any, in which the immunity exists in any complete form. . . .

\*　\*　\*

The *Goller* case has now been followed by a substantial minority of jurisdictions. The Institute regards these decisions as establishing a clear and accelerating trend, which is expected to extend to other courts. This Section approves

that trend and takes the position that under the better law the immunity between parent and child is entirely abrogated.

*See Carver v. Carver,* 310 N.C. 669, 314 S.E. 2d 739 (1984) (expanding the applicability of G.S. Sec. 1-539.21 to include actions for wrongful death, rather than only for personal injury or property damage).

It is significant that the Restatement approach, as well as the *Goller* and *Gibson* approaches, abolishes the doctrine and replaces it with a narrow rule respecting the role of parental discipline. This is to be preferred over an *ad hoc* approach, maintaining the parental immunity rule but carving out exceptions as they arise. Although the result is theoretically the same narrow doctrine, the Supreme Court's advice in *Skinner v. Whitley,* 281 N.C. 476, 484, 189 S.E. 2d 230, 235 (1972) is well taken: "Piecemeal abrogation of established law by judicial decree is, like a partial amputation, ordinarily unwise and usually unsuccessful." I am also mindful of the view taken by the Supreme Court in 1972:

> If the immunity rule in ordinary negligence cases is no longer suited to the times, as some decisions suggest, we think innovations upon the established law in this field should be accomplished prospectively by legislation rather than retroactively by judicial decree. Such changes may be accomplished more appropriately by legislation defining the areas of non-immunity and imposing such safeguards as may be deemed proper. Certainly that course is much preferred over judicial piecemeal changes in a case-by-case approach. A similar conclusion has been reached by others. "The simplest way to effectuate a change in the law is to enact a statute doing so. The courts have frequently said that the question of public policy is to be determined by the legislature and not by the court." 3 Lee, North Carolina Family, Sec. 248.

*Id.* (Emphasis omitted.) Nevertheless, this view may have been at least partially prompted by the belief that a judicial approach necessarily would be piecemeal. As mentioned above, the three approaches now firmly entrenched in other states are judicial innovations, in response to the inadequacy of the judicially-created parental immunity rule, that are not piecemeal.

Perhaps the simplest way to effectuate a change in this doctrine would be by statute. But this is not the only way. After all,

courts, not legislatures, created the doctrine. And most states that have abolished parental immunity have done so by court decision, not by statute. Lee, *supra,* Sec. 248, at 301. In my view, judicial action here would be consistent with the legislative intent behind the enactment of G.S. Sec. 1-539.21. That statute allows an unemancipated child to bring an action against his or her parent for the negligent operation of a motor vehicle. This was a rational legislative response to a specific problem of automobile accidents. *Ledwell v. Berry,* 39 N.C. App. 224, 226, 249 S.E. 2d 862, 864 (1978), *disc. rev. denied,* 296 N.C. 585, 254 S.E. 2d 35 (1979) ("We believe it is less than realistic to hold that the problem of automobile accidents is not sufficiently large to acquire a uniqueness of its own."). It is clear that the legislature did not intend to occupy the entire field of parental immunity, but merely provided a remedy when one was badly needed. In fact, it was suggested in *Carver* that the statute was enacted in response to judicial invitations to curtail the parental immunity rule. 310 N.C. at 673, 314 S.E. 2d at 742. In my view, the legislature appears to be taking the piecemeal approach feared by our Supreme Court.

It is appropriate for the courts to modify or abolish doctrines that they have created that no longer serve the interests of justice. Our courts created the parental immunity rule by relying on other states' decisions and must be able to alter it by relying on other states' decisions, at least when, as here, the legislature has not codified the common law. This State should not become the notable exception to the growing list of jurisdictions embracing the modern trend toward the abrogation of the parental immunity doctrine.