BRANCH BANKING & TRUST COMPANY AND BB&T COLLATERAL SERVICE CORPORATION, AS TRUSTEE, PLAINTIFFS V. D. KEITH TEAGUE AND WIFE, PENNY TEAGUE; DANNY GLOVER, JR. AND WIFE, MEREDITH GLOVER; NINA B. GIBBS AND HUSBAND, ROBERT E. GIBBS, JR., INDIVIDUALLY AND AS CO-TRUSTEES OF GIBBS FAMILY REVOCABLE TRUST U/D APRIL 2, 2009, AND GIBBS FAMILY REVOCABLE TRUST, DEFENDANTS

No. COA11-787

(Filed 20 March 2012)

**1. Mortgages and Deeds of Trust—reformation—bona fide purchasers for value—without notice**

The trial court did not err in a case involving a deed of trust by granting summary judgment in favor of the Teague defendants on the issue of whether plaintiffs were entitled to reformation of the deed of trust. The Teague and Glover defendants were *bona fide* purchasers for value who took the property in question without notice of the alleged defect in the deed, and reformation will not be granted if prejudice would result to the rights of a *bona fide* purchaser for value without notice.

**2. Mortgages and Deeds of Trust—reformation—prejudice—material issue of fact**

The trial court erred in a case involving a deed of trust by granting summary judgment to the Teague defendants on the issue of whether plaintiffs were entitled to reformation of the deed of trust. Whether defendants would have been prejudiced by reformation of the deed was a genuine issue of material fact.

**3. Liens—equitable lien—no breach of oral agreement—no action inconsistent with fiduciary or contractual obligation**

The trial court did not err in a case involving a deed of trust by not imposing an equitable lien on a tract of land at issue. Plaintiffs did not assert that the Teague defendants had breached an oral agreement with plaintiffs or that the Teagues had acted inconsistently with some sort of a fiduciary or contractual obligation that they owed to plaintiffs.

Appeal by Plaintiffs from judgment entered 11 April 2011 by Judge Cy A. Grant, Sr. in Pasquotank County Superior Court. Heard in the Court of Appeals 17 November 2011.

*Poyner Spruill LLP, by David Dreifus and Chad W. Essick, for Plaintiffs-Appellants.*

*Trimpi & Nash, LLP, by John G. Trimpi, for Defendants-Appellees.*

BEASLEY, Judge.

Plaintiffs Branch Banking & Trust Company and BB&T Collateral Service Corporation appeal from an order granting summary judgment in favor of Defendants D. Keith Teague and wife, Penny Teague; Danny Glover, Jr. and wife, Meredith Glover; and Teague & Glover, P.A. (the Teague Defendants),[1] and dismissing Plaintiffs' claims for reformation of a deed of trust from Defendants Robert E. Gibbs, Jr., and Nina B. Gibbs to BB&T; the imposition of an equitable lien on property that Plaintiffs seek to have made subject to the deed of trust; and the foreclosure of the reformed deed of trust. For the following reasons, we affirm in part and reverse and remand in part.

In 1984, Ms. Gibbs began working for Teague & Glover as a bookkeeper. After learning that Ms. Gibbs had embezzled substantial sums from the law firm over a period of years, Teague & Glover terminated Ms. Gibbs' employment. Ms. Gibbs was criminally prosecuted and imprisoned as a result of her activities. In addition, Teague & Glover

---

1. Plaintiffs' complaint also named Nina B. Gibbs; her husband, Robert E. Gibbs, Jr. (both individually and in their capacity as Co-Trustees of the Gibbs Family Revocable Trust); and the Gibbs Family Revocable Trust (the Gibbs Defendants) as parties defendant. After the entry of summary judgment in favor of the Teague Defendants, Plaintiffs voluntarily dismissed their claims against the Gibbs Defendants, who have not participated in this appeal.

filed a civil suit against the Gibbs[2]. In March 2010, Teague & Glover obtained a judgment against the Gibbs requiring the payment in damages in excess of $800,000. Subsequently, Defendants made an arrangement with the Gibbs under which they agreed to transfer all of their real and personal property to Teague & Glover in exchange for a reduction in the total amount of the judgment.

The property that underlies the present dispute consists of approximately 1.3 acres and is divided into two tracts: Tract A, an undeveloped tract containing about .6 acres, and Tract B, which contains the remainder of the property and includes the Gibbs' primary residence. The Gibbs obtained loans from BB&T in 1999 and 2005, each of which was secured by a deed of trust applicable to the entire 1.3 acre parcel. On 3 March 2009, the Gibbs obtained a new loan from BB&T in the amount of approximately $94,000, with this total representing the outstanding principal obligation associated with the earlier loans. The 3 March 2009 loan was secured by a deed of trust applicable solely to Tract A. At the time that the Gibbs deeded the property to the Teagues and the Glovers, the recipients took the property subject to the deed of trust applicable to Tract A without assuming responsibility for the underlying debt secured by that instrument.

After obtaining title to the property, the Teague Defendants commissioned a survey which disclosed, among other things, that Tract A was the only part of the overall parcel subject to the deed of trust. In August 2010, the Teagues and the Glovers sold the property at an auction sale at which they informed prospective bidders that the property was subject to a lien secured by a deed of trust applicable to a portion of the property.

On 17 August 2010, Plaintiffs filed a complaint in which they sought reformation of the 2009 deed of trust from the Gibbs to BB&T so as to include Tract B as additional collateral associated with the loan that BB&T had made to the Gibbs, the imposition of an equitable lien on the entire parcel, and the foreclosure of the reformed deed of trust. On 19 August 2010, Plaintiffs filed a notice of *lis pendens* applicable to the entire tract pursuant to N.C. Gen. Stat. § 1-116. On 8 November 2010, the Teague Defendants filed an answer in which they denied having had any knowledge that there was a "dispute" concerning the scope of the deed of trust or that a "mistake" had been

---

2. Although Plaintiffs and the Teague Defendants refer to Mr. and Ms. Gibbs as "the Gibbs," the proper plural form of the name Gibbs is "Gibbses." For continuity, we also refer to the Gibbses as "the Gibbs."

made in the deed of trust. On 15 February 2011, the Teague Defendants filed a summary judgment motion. On 18 March 2011, Plaintiffs filed a cross motion for summary judgment. The parties' motions were heard by the trial court on 28 March 2011. On 11 April 2011, the trial court entered an order granting summary judgment in favor of the Teague Defendants. From this order, Plaintiffs now appeal.

I.

[1] Plaintiffs argue that the trial court erred by granting summary judgment in favor of the Teague Defendants on the issue of whether Plaintiffs were entitled to reformation of the deed. In addition, Plaintiffs argue that the reformed deed of trust should relate back to the date of original execution, thereby giving it priority over the deed from the Gibbs to the Teagues and Glovers. We disagree.

According to N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011), summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citing *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)). "[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the non-moving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000).

When the court reforms an instrument in connection with the imposition of an equitable or parol trust, "[t]he general rule is that reformation will not be granted if prejudice would result to the rights of a *bona fide* purchaser for value without notice or someone occupying a similar status." *Arnette v. Morgan*, 88 N.C. App. 485, 462, 363 S.E.2d 678, 680 (1988). The undisputed evidence before the trial court reflects that, after the execution and recordation of the deed of trust, the Gibbs deeded the parcel to the Teagues and Glovers in exchange for a $200,000 reduction in the amount of the judgment that Teague & Glover had obtained against the Gibbs. Plaintiffs do not appear to dispute that this $200,000 reduction in the amount of Teague & Glovers' judgment against the Gibbs constituted the provision of valuable con-

sideration in return for the underlying transfer, since a grantor who cancels or reduces a grantee's preexisting debt in exchange for a deed is a *bona fide* purchaser for value. *See Sansom v. Warren*, 215 N.C. 432, 436, 2 S.E.2d 459, 461 (1939).

In addition, the parties appear to agree that the undisputed record evidence establishes that, at the time the Gibbs executed the deed to the Teagues and the Glovers in exchange for a reduction in the amount owed under the judgments, the Teague Defendants had no notice that Plaintiffs or the Gibbs Defendants claimed that there was an error in the deed of trust that the Gibbs had given to BB&T for the purpose of securing the 2009 loan that BB&T had extended to the Gibbs. In fact, Plaintiffs concede that the deed from the Gibbs to the Teagues and the Glovers was executed and recorded on 19 May 2010 and that, "[o]nly after [their] survey was completed in June 2010 did the Law Firm and the Teagues and Glovers learn that the property description in the 2009 Deed of Trust did not describe the entire Property but only described [Tract A]." As a result, we conclude that the Teagues and the Glovers were *bona fide* purchasers for value who took the property in question without notice of the alleged defect in the deed of trust applicable to the property. For that reason, we need not decide whether the deed of trust rested upon a mutual mistake of fact or whether an equitable lien or parol trust should have been imposed because, even if the omission of Tract B from the property utilized to secure the loan from BB&T to the Gibbs resulted from a mutual mistake of the parties or should have otherwise led to the imposition of a parol trust or an equitable lien, any reformed deed of trust would not have priority over the deed from the Gibbs to the Teagues and the Glovers.

Although Plaintiffs acknowledge that reformation of a deed of trust based upon a mutual mistake or the imposition of an equitable lien or parol trust will not be allowed to prejudice the rights of a *bona fide* purchaser for value, they argue that the Teague Defendants are not entitled to that status. Plaintiffs' contention rests on the assertion that "each case must be evaluated on its specific facts in order to determine whether any third party actually relied on the public record, and whether reformation would *prejudice* an innocent purchaser for value." The position espoused by Plaintiffs essentially assumes that, in addition to demonstrating that the Teagues and the Glovers obtained a deed to the property for valuable consideration and without notice of the alleged error in the deed of trust, the Teague Defendants must also adduce evidence that, in reaching the

decision to accept a deed to the property in exchange for reducing the amount of the judgment that Teague & Glover had obtained against the Gibbs, they "actually relied" on the allegedly erroneous provisions of the deed of trust. In support of this argument, Plaintiffs rely upon "the general principles of reformation," which they contend render "the recording statutes . . . inapplicable," and argue that their position is supported by this Court's decision in *Noel Williams Masonry v. Vision Contractors of Charlotte*, 103 N.C. App. 597, 406 S.E.2d 605 (1991). We disagree.

In *Williams Masonry*, a contractor obtained a construction loan from a lending institution for use in developing a piece of property. The loan in question was secured by a deed of trust that failed to include a legal description specifically identifying the property utilized to secure the loan. Subsequently, the contractor entered into contracts with several subcontractors under which the subcontractors agreed to supply labor and materials for use in connection with construction activities on the property. After the contractor failed to pay the subcontractors, the subcontractors filed claims of lien against the property. Subsequently, the lending institution discovered the error in the deed of trust and recorded a corrected deed of trust. The trial court allowed reformation of the deed of trust and held that the reformed deed of trust related back to the date upon which the original deed of trust had been recorded, effectively giving the lending institution priority over the subcontractors' lien claims. On appeal, this Court affirmed the trial court's ruling, holding, in reliance upon the logic set out in *Arnette*, 88 N.C. App. at 460-62, 363 S.E.2d at 679-81, that the lender was entitled to the imposition of a parol trust on the property used to secure the loan and that the subcontractors should not be accorded the status of *bona fide* purchasers for value without notice given the absence of any evidence tending to show that they had either relied on the terms of the deed of trust in contracting with the contractor or had properly searched the public record for notice of defects in the deed of trust.

Plaintiffs' challenge to the trial court's order in reliance on *Williams Masonry* is tantamount to a contention that they were entitled to have a parol trust or equitable lien imposed upon Tract B. However, *Williams Masonry* and our recent decision in *S.T. Wooten Corp. v. Front Street Construction, LLC*, ___ N.C. App. ___, ___, 719 S.E.2d 249, 252 (2011) (upholding reformation of a deed under *Williams Masonry* despite an intervening claim of lien because the lien creditor "did not begin work or furnish new materials in reliance

upon the error in the original deed" or "know of the mistake in the deed"), are readily distinguishable from the facts present here. In *Williams Masonry*, the subcontractors did not hold a deed or deed of trust applicable to the property. As a result, the specific issue before the Court in *Williams Masonry* was whether the subcontractors "should be given the status of *bona fide* purchasers for value." *Williams Masonry*, 103 N.C. App at 603, 408 S.E.2d at 608. In declining to afford the subcontractors that status, we noted that, "[a]lthough each subcontractor contributed labor and materials to the property, there is no evidence that the consideration was given on the faith of the ownership of the property . . . free and clear of any deed of trust." *Id*. In other words, the subcontractors provided labor and materials pursuant to a contract with the contractor under which they would be paid for their work; as might be expected, the contract between the contractor and the subcontractors had no legal relationship to the terms of the deed of trust securing the loan on the property that had been obtained by the contractor. Though the deed of trust was not part of the contract under which the subcontractors provided labor and materials at the development, the subcontractors had not checked the public record to determine whether there was any notice that the deed of trust was defective. Thus, we concluded that there was no legal basis for treating the subcontractors as *bona fide* purchasers for value without notice entitled to protection from reformation based upon the imposition of a parol trust or equitable lien.

After carefully reviewing the record and the briefs and the applicable decisions of this Court and the Supreme Court, we conclude that *Williams Masonry* is focused solely upon situations involving a party who, although not a *bona fide* purchaser for value, wishes to be treated as if it were one for purposes of resisting reformation based upon the imposition of a parol trust or an equitable lien. *Williams Masonry* did not hold that an actual *bona fide* purchaser for value without notice, such as the Teagues and the Glovers, must, in addition to providing consideration, establish specific reliance on the allegedly defective portions of a deed or deed of trust in making a particular business decision or satisfy any other additional requirements. Instead, *Williams Masonry* held that parties who are not actual *bona fide* purchasers for value will not be treated as having that status in a situation involving reformation arising from the imposition of a parol trust in the event that there is no connection between their contract with the grantor of a deed of trust and the terms of that instrument.

In this case, however, the Teagues and the Glovers are indisputably *bona fide* purchasers for value. The undisputed record evidence establishes that the Teagues and the Glovers hold a deed to the entire tract of property and that their interest in the property is explicitly subject to the lien created by the deed of trust. For that reason, the Teagues and the Glovers are not lienholders claiming to be entitled to the same treatment as a *bona fide* purchaser for value—they actually are *bona fide* purchasers for value.[3] As a result, even if Plaintiffs were otherwise entitled to the imposition of a parol trust or equitable lien applicable to Tract B, this fact would not overcome the rights of the Teagues and the Glovers as bona fide purchasers for value without notice. Thus, we conclude that the logic underlying *Williams Masonry* is not controlling in this case, so that any failure on the part of the Teague Defendants to establish that they "relied" on the alleged error in the deed of trust in deciding to take a deed in exchange for a reduction in the judgment amount is beside the point.[4]

II.

**[2]** Secondly, Plaintiffs argue that the trial court erred in granting summary judgment to the Teague Defendants where they had not established they would be prejudiced by reformation of the deed. We agree.

In essence, Plaintiffs argue that, since the Teague Defendants "had to have expected" that the loan would be repaid in connection with the foreclosure process and since the Teague Defendants did not rely on the terms of the deed of trust during their negotiations with the Gibbs, the Teague Defendants would receive "exactly what they bargained for" in the event that "the 2009 Deed of Trust is reformed."

It is axiomatic that when this Court reviews a trial court's grant of summary judgment, the "[e]vidence presented by the parties is viewed in the light most favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)). Here, the

---

3. In light of that fact, we need not give separate consideration to the issue of whether Teague & Glover had *bona fide* purchaser for value status, given that the interest held by the Teagues and the Glovers is sufficient to preclude reformation of the deed of trust.

4. In light of our decision with respect to this issue, we need not address the other arguments advanced by the parties in reliance on the logic utilized in *Williams Masonry*.

uncontroverted evidence shows that the value of Plaintiff's lien was subtracted from the fair market value of the property when the amount to credit the judgment was determined. When that fact is viewed in the light most favorable to Plaintiffs, whether Defendants would be prejudiced by reformation of the deed is a genuine issue of material fact. As such, summary judgment on this particular issue was not proper, and the case should be remanded to the lower court for consideration of potential prejudice to Defendants.

## III.

[3] Finally, Plaintiffs claim that they are entitled to have an equitable lien imposed upon the entire parcel. Plaintiffs have not, however, asserted that the Teague Defendants have breached an oral agreement with Plaintiffs or that the Teague Defendants have acted inconsistently with some sort of a fiduciary or contractual obligation that they owed to Plaintiffs. In essence, Plaintiffs' ultimate complaint is nothing more or less than a disagreement with the priority rules established by the relevant statutory provisions as construed by the Supreme Court and this Court. "Issues of public policy should [, however,] be addressed to the legislature." *Allen v. Allen*, 76 N.C. App. 504, 507, 333 S.E.2d 530, 533 (1985) (citing *Skinner v. Whitley*, 281 N.C. 476, 484, 189 S.E.2d 230, 235 (1972)). As a result, Plaintiffs are not entitled to have Tract B subjected to an equitable lien in their favor.

Thus, for the reasons set forth above, we conclude that the trial court's order should be, and hereby is, affirmed in part and reversed and remanded in part.

Affirmed in Part; Reversed and Remanded in Part.

Judge THIGPEN concurs.

Judge ERVIN concurs in part and dissents in part in separate opinion.

ERVIN, Judge, concurring in part and dissenting in part.

Although I concur in the Court's determinations that the Teagues and the Glovers were *bona fide* purchasers for value; that Plaintiffs were not entitled to reformation of the deed of trust; and that the holding in *Williams Masonry* is not controlling in the present case, I am unable to agree with the Court's conclusion that there is a genuine issue of material fact regarding whether Defendants would be preju-

diced by reformation of the deed of trust. As a result, I concur in the Court's opinion in part and dissent in part.

" 'A genuine issue of material fact arises when 'the facts alleged . . . are of such nature as to affect the result of the action.' " *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 179, 182, 711 S.E.2d 114, 116 (2011) (quoting *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971)) (citation and quotation marks omitted); *see also City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654, 268 S.E.2d 190, 193 (1980) (stating that "[a]n issue is material if, as alleged, facts would constitute a legal defense, or would affect the result of the action or if its resolution would prevent the party against whom it is resolved from prevailing in the action"). The ultimate issue about which the Court and I disagree is the extent, if any, to which the existence of a factual dispute about the manner in which the size of the credit that the Gibbs' received against the Teague & Glover judgment would constitute a genuine issue of material fact.

According to *Black's Law Dictionary*, "prejudice" is defined as "[d]amage or detriment to one's legal rights or claims." *Black's Law Dictionary* 1218 (8th ed. 2004). In light of that definition, I believe that any "prejudice" determination requires a "before and after" comparison involving the nature and extent of a party's legal rights "with or without" the relevant event. As I understand the present record, there is no dispute that (1) Defendants were deeded a tract of property of which only Tract A, which contains less than half the total amount of property previously owned by the Gibbs and which does not include the residence that had been constructed on the property, was encumbered by Plaintiff's deed of trust; (2) if the Gibbs fail to meet their obligation under the deed of trust, the bank is only entitled to foreclose upon Tract A, rather than the entire tract of property previously owned by the Gibbs; (3) if the deed of trust were reformed in accordance with Plaintiff's request, the entire tract of property, including both Tract A and the remainder of the overall tract, would then be encumbered by Plaintiff's deed of trust; and (4) if the Gibbs defaulted on their obligation to Plaintiff after reformation, Plaintiff would be able to foreclose on the entire tract of property rather than just on Tract A. As a result, reformation would result in a change from a situation in which the larger and more desirable portion of the property in question was unencumbered to one in which the entire property is encumbered. In my view, such an outcome clearly constitutes "damage or detriment" to the Teagues' and Glovers' "legal

rights" sufficient to compel a finding of "prejudice" regardless of the other factors upon which the Court relies.

As the Court correctly observes, "Plaintiffs argue that, since the Teague Defendants 'had to have expected' that the loan would be repaid in connection with the foreclosure process and since the Teague Defendants did not rely on the terms of the deed of trust during their negotiations with the Gibbses, the Teague Defendants would receive 'exactly what they bargained for' in the event that 'the 2009 Deed of Trust is reformed.' " This argument, which the Court obviously accepts, does not rest upon a comparison between the nature and extent of Defendants' legal rights with or without reformation of the deed of trust. Instead, the Court appears to compare the economic effect of reformation with Defendants' subjective expectations regarding the economic value of the bargain they made with the Gibbs. Put another way, the Court, consistently with Plaintiff's argument, assumes that, if the amount of the debt owed by the Gibbs to BB&T was utilized in calculating the amount of credit which the Gibbs were entitled to receive against the Teague & Glover judgment in return for deeding the entire parcel to the Teagues and the Glovers, then the Teague Defendants would be unable to show the necessary prejudice.

The approach adopted by the Court is inconsistent with the manner in which I believe that the prejudice inquiry should be conducted. As I understand the appropriate prejudice inquiry, which should rest upon a "before and after" comparison of the type outlined above, the various factors, both objective and subjective, upon which Defendants relied in deciding how much to credit the Gibbs for the deed to the property are legally irrelevant to the issue of whether Defendants would be prejudiced by reformation of the deed of trust encumbering the property. As a result, the evidence upon which the Court relies in reversing the trial court's decision with respect to the prejudice issue does not relate to a "material" issue of fact, because resolution of this issue would not affect the outcome of the case. Thus, since the Court reaches a contrary conclusion, I respectfully dissent from the Court's decision to remand this case to the trial court for consideration of this issue,while concurring with the remainder of its opinion.