Lee v. Mowett Sales Co.

JENNIFER LEE, BY HER GUARDIAN *AD LITEM*, E. S. SCHLOSSER, JR., PLAINTIFF v.
MOWETT SALES COMPANY, INC., AND LOWE'S OF N.C., OPERATING AS
LOWE'S OF NORTH GREENSBORO, DEFENDANTS, AND MOWETT SALES COM-
PANY, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF v. KYU C. LEE, THIRD-
PARTY DEFENDANT

No. 627A85

(Filed 6 May 1986)

**Parent and Child § 2.1— child injured by lawn mower—parent-child immunity—
manufacturer's action for contribution against parent barred**

In an action against the manufacturer of a lawn mower to recover for in-
juries received by the minor plaintiff when she was struck by the blade of a
riding lawn mower operated by her father, the doctrine of parent-child im-
munity barred the manufacturer's third-party action against the father for con-
tribution on the theory of joint or concurring negligence.

Justice MARTIN dissenting.

Justice EXUM dissenting.

APPEAL of right under N.C.G.S. § 7A-30(2) from the decision
of a divided panel of the Court of Appeals, 76 N.C. App. 556, 334
S.E. 2d 250 (1985), affirming the dismissal of the third-party plain-
tiff's complaint, by *Washington, J.,* on 17 October 1984 in Supe-
rior Court, GUILFORD County. Heard in the Supreme Court 12
February 1986.

*Nichols, Caffrey, Hill, Evans & Murrelle by Karl N. Hill, Jr.
and Clyde H. Jarrett, for the third-party plaintiff appellant.*

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Daniel W.
Fouts and Margaret F. Shea, for the third-party defendant ap-
pellee.*

MITCHELL, Justice.

This appeal involves an action by the defendant third-party
plaintiff, Mowett Sales Company, Inc., against the plaintiff's fa-
ther, Kyu C. Lee, for contribution on the grounds that he was
negligent in supervising the plaintiff, his daughter Jennifer Lee;
that he failed to keep a proper lookout while operating a lawn
mower; that he operated the lawn mower in a reckless manner;
and that he failed to adequately familiarize himself with the lawn

mower. We conclude that this action against the father fails to state a claim upon which relief can be granted.

On 25 April 1980, the plaintiff Jennifer Lee, an unemancipated minor, was injured when a lawn mower driven by her father, the third-party defendant, came in contact with her feet. The accident resulted in the amputation of her left foot and of three toes of her right foot.

In her complaint the plaintiff child alleged that her injuries were the result of defects in the lawn mower manufactured by the defendant third-party plaintiff, Mowett Sales Company, Inc. The complaint alleged specifically that the lawn mower failed to stop operating when the plaintiff's father removed his foot from the accelerator pedal. The defendant Mowett Sales Company, Inc., filed a third-party complaint against the plaintiff's father seeking contribution. The third-party defendant father moved pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) to dismiss the third-party complaint for failure to state a claim upon which relief can be granted, because the parent-child immunity doctrine barred the action. On 17 October 1984, Judge Washington granted the motion to dismiss. The defendant third-party plaintiff, Mowett Sales Company, Inc., appealed to the Court of Appeals.

In affirming the trial court's order granting the father's motion to dismiss, the Court of Appeals relied on *Watson v. Nichols*, 270 N.C. 733, 155 S.E. 2d 154 (1967) in which a demurrer to a cross-action against a minor plaintiff's father was sustained. In *Watson*, this Court held that a third party may not maintain an action for contribution against a parent in such cases, since the parent cannot be held liable in a direct action by the injured child. We affirm the holding of the Court of Appeals.

Mowett Sales Company, Inc., the third-party plaintiff, urges us now to abolish the doctrine of parent-child immunity stating that the doctrine is riddled with exceptions and is no longer backed by sound policy reasons. Because the parent-child immunity doctrine is firmly embedded in our case law and the legislature has declined to enact its abolition, we do not disturb the doctrine as it now exists.

The doctrine of parent-child immunity was first introduced in 1891 in the case of *Hewlett v. George*, 68 Miss. 703, 9 So. 885

(1891). In *Hewlett*, an unemancipated minor child brought an action against her mother for her illegal imprisonment in an insane asylum which had been motivated by her mother's desire to obtain the child's property. The court denied the child's claim explaining that:

> The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim of civil redress for personal injuries suffered at the hand of the parent.

68 Miss. at 711, 9 So. at 887.

In North Carolina, the doctrine was first applied in the case of *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12 (1923). In denying the minor child's action against her father to recover damages caused by an automobile collision, this Court stated that:

> No greater disservice could be rendered to any child than to teach its feet to stray from the path of rectitude, or to suffer its mind to be poisoned by ideas of disloyalty and dishonor . . . . From the very beginning the family in its integrity has been the foundation of American institutions, and we are not now disposed to depart from this basic principle. Freedom in this country is the self-enforcement of self-enacted laws; and liberty with us is the right to go and do as you please under the law, or so long as you please to do right. Hence, in a democracy or a polity like ours, the government of a well ordered home is one of the surest bulwarks against the forces that make for social disorder and civic decay. It is the very cradle of civilization, with the future welfare of the commonwealth dependent, in a large measure, upon the efficacy and success of its administration. Under these conditions, the State will not and should not permit the management of the home to be destroyed by the individual members thereof, unless and until the interests of society itself are threatened.

185 N.C. at 584, 118 S.E. at 15.

The *Small* decision enunciated the rule that an unemancipated minor child may not maintain an action based on ordinary negligence against his parents. *Redding v. Redding*, 235 N.C. 638,

70 S.E. 2d 676 (1952); *Evans v. Evans*, 12 N.C. App. 17, 182 S.E. 2d 227, *cert. den.*, 279 N.C. 394, 183 S.E. 2d 242 (1971). In *Watson* the rule was applied when this Court held that, since a parent is not liable in a direct action for the plaintiff child's injury, the parent cannot be held liable for any contribution for damages awarded against another as a result of such injury. 270 N.C. at 735, 155 S.E. 2d at 156. However, the parent-child immunity doctrine does not apply to actions by an unemancipated minor with respect to contract and property rights, actions by an unemancipated minor involving willful and malicious acts, or actions by an emancipated child for torts committed after emancipation. 3 Lee, *North Carolina Family Law* § 248 (4th ed. 1981).

In *Skinner v. Whitley*, 281 N.C. 476, 189 S.E. 2d 230 (1972), this Court was urged to abolish the parent-child immunity doctrine in the case of a wrongful death caused by a father's negligence. The plaintiff, the administrator of an unemancipated minor's estate, argued that "the rationale for the immunity rule — the maintenance of family harmony and parental discipline — cannot be applied to the facts here since, by reason of the death of the daughters and their father, there no longer exists a parent-child or other family relationship." 281 N.C. at 479, 189 S.E. 2d at 232.

The Court in *Skinner* recounted the history of the immunity doctrine which dated back to 1891. The Court determined that five policy reasons were relied upon in support of the immunity: (1) disturbance of domestic tranquility, (2) danger of fraud and collusion, (3) depletion of the family exchequer, (4) the possibility of inheritance, by the parent, of the amount recovered in damages by the child, and (5) interference with parental care, discipline and control. 281 N.C. at 480, 189 S.E. 2d at 232. After reviewing the law of the different jurisdictions, this Court declined to modify or abolish the doctrine stating that:

> Piecemeal abrogation of established law by judicial decree is, like a partial amputation, ordinarily unwise and usually unsuccessful. When the question of parental immunity was first presented to this Court nearly fifty years ago in *Small v. Morrison, supra* [185 N.C. 577, 118 S.E. 12, 31 A.L.R. 1135 (1923)], we expressed the view that the government of the home was the surest bulwark against social disorder and

civic decay. We based the immunity rule on the basic principle that parents and unemancipated children in the home constitute a social unit different from all other groups so as to make suits by one against the other for negligent injury most unseemly and productive of great mischief. Our decision there was grounded on considerations of broad public policy, and in our view those considerations still outweigh the arguments for change in cases involving ordinary negligence resulting in unintended personal injury or death . . . .

If the immunity rule in ordinary negligence cases is no longer suited to the times, as some decisions suggest, we think innovations upon the established law in this field should be accomplished *prospectively* by legislation rather than *retroactively* by judicial decree. Such changes may be accomplished more appropriately by legislation defining the areas of nonimmunity and imposing such safeguards as may be deemed proper. Certainly that course is much preferred over judicial piecemeal changes in a case-by-case approach. A similar conclusion has been reached by others. "The simplest way to effectuate a change in the law is to enact a statute doing so. The courts have frequently said that the question of public policy is to be determined by the legislature and not by the court." 3 Lee, North Carolina Family Law, § 248. *Accord, Downs v. Poulin*, 216 A. 2d 29 (Me. 1966); *Castellucci v. Castellucci*, 94 R.I. 34, 188 A. 2d 467 (1963).

281 N.C. at 484, 189 S.E. 2d at 235.

In an apparent response to the language in *Skinner*, the General Assembly in 1975 enacted a statute that abolished the parent-child immunity doctrine *only in motor vehicle cases.* N.C.G.S. § 1-539.21 (1975). That statute provides that:

The relationship of parent and child shall not bar the right of action by a minor child against a parent for personal injury or property damage arising out of the operation of a motor vehicle owned or operated by such parent. (1975, c. 685, s. 1.)

This legislative action may have resulted in part from a recognition of the compulsory nature of modern automobile liability insurance statutes. *See* N.C.G.S. ch. 20, art. 9A.

Lee v. Mowett Sales Co.

This Court is aware of the trend in abolishing or modifying the parent-child immunity doctrine. Without addressing the modern applicability of the policy reasons supporting the doctrine, we note that in approximately half of the states the doctrine is still in force. *See, e.g., American Fire & Casualty Co. v. State Farm Mut. Auto Ins. Co.*, 290 Ala. 21, 273 So. 2d 186 (1973); *Thomas v. Inmon*, 268 Ark. 221, 594 S.W. 2d 853 (1980); *Horton v. Reaves*, 186 Colo. 149, 526 P. 2d 304 (1974); *Dennis v. Walker*, 284 F. Supp. 413 (D.D.C. 1986); *Orefice v. Albert*, 237 So. 2d 142 (Fla. 1970); *Coleman v. Coleman*, 157 Ga. App. 553, 278 S.E. 2d 114 (1981); *Thomas v. Chicago Bd. of Educ.*, 77 Ill. 2d 165, 395 N.E. 2d 538 (1979); *Vaughan v. Vaughan*, 161 Ind. App. 497, 316 N.E. 2d 455 (1974); *Bondurant v. Bondurant*, 386 So. 2d 705 (La. Ct. App. 1980); *Shell Oil Co. v. Ryckman*, 43 Md. App. 1, 403 A. 2d 379 (1979); *Rayburn v. Moore*, 241 So. 2d 675 (Miss. 1970); *Fugate v. Fugate*, 582 S.W. 2d 663 (Mo. 1979); *State Farm Mut. Ins. Co. v. Leary*, 168 Mont. 482, 544 P. 2d 444 (1975); *Pullen v. Novak*, 169 Neb. 211, 99 N.W. 2d 16 (1959); *Fitzgerald v. Valdez*, 77 N.M. 769, 427 P. 2d 655 (1967); *Chaffin v. Chaffin*, 239 Or. 374, 397 P. 2d 771 (1964); *Matarese v. Matarese*, 47 R.I. 131, 131 A. 198 (1925); *Oldman v. Bartshe*, 480 P. 2d 99 (Wyo. 1971). *See also* Hollister, *Parent-Child Immunity: A Doctrine in Search of Justification*, 50 Fordham L. Rev. 489, 528-32 (1982).

After this Court's decisions in both *Watson* and *Skinner*, the legislature reviewed the parent-child immunity doctrine and carved out *only a single exception* involving a child's personal injuries resulting from a parent's operation of a motor vehicle. Having spoken in 1975, the legislature otherwise left the parent-child immunity doctrine intact in cases involving personal injury resulting from the ordinary negligence of a parent or child.

To judicially abolish the parent-child immunity doctrine after the legislature has considered and retained the doctrine would be to engage in impermissible judicial legislation. If the doctrine is to be abolished at this late date, it should be done by legislation and not by the Court. *Skinner*, 281 N.C. at 484, 189 S.E. 2d at 235. *See Steelman v. City of New Bern*, 279 N.C. 589, 594, 184 S.E. 2d 239, 243 (1971) (court refused to abolish the firmly established doctrine of sovereign immunity, stating modification should come from the General Assembly). "It is not reasonable to assume that the legislature would leave an important matter . . . open to

speculation, consequently, the judiciary should avoid 'ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced.'" *Deese v. Southeastern Lawn*, 306 N.C. 275, 278, 293 S.E. 2d 140, 143 (1982), *quoting Shealy v. Associated Transport*, 252 N.C. 738, 741, 114 S.E. 2d 702, 705 (1960). We decline to adopt judicial "legislation" by abolishing the parent-child immunity doctrine. The doctrine will continue to be applied as it now exists in North Carolina until it is abolished or amended by the legislature.

Affirmed.

Justice MARTIN dissenting.

I respectfully dissent, and vote to reverse the decision of the Court of Appeals. This appeal gives this Court an opportunity to move our jurisprudence forward with the mainstream of current judicial thought on the issue of parent-child immunity. The considerations that led this Court to adopt the theory of parent-child immunity in *Small v. Morrison*, 185 N.C. 577, 118 S.E. 12 (1923), have been eroded throughout the sixty-three intervening years. The exceptions have almost consumed the rule. The remaining vestiges of the principle can best be addressed by the question: Why should the law favor negligent parents over their injured children?

I can add little to the excellent, scholarly analysis of this issue by Judge Becton, and adopt his dissenting opinion reported in *Lee v. Mowett Sales Co.*, 76 N.C. App. 556, 334 S.E. 2d 250 (1985).

Additionally, the open courts provision of our constitution mandates that children should have a remedy against their negligent parents. N.C. Const. art. I, § 18.

It is also to be noted that the issue in this appeal is between Mowett Sales Company, Inc., and Kyu C. Lee on a cross-action asking for contribution from Lee on the theory of joint and concurring negligence. This is not a suit by Jennifer Lee against her father. In *Watson v. Nichols*, 270 N.C. 733, 155 S.E. 2d 154 (1967), relied upon by the third-party defendant, Kyu Lee, the original defendant attempted to cross-claim against the parents of plaintiff and escape liability on allegations of primary and secondary

liability. (Although defendant also alleged contribution, this Court did not consider that question.) I find *Watson* to be an unwarranted extension of the flawed parent-child immunity doctrine and vote for its reversal. Such valid reasons, if any, that could possibly support the parent-child immunity doctrine are certainly not available to sustain Mowett's cross-claim against Lee. In reality, the true situation here presented is whether Mowett's insurance carrier can receive contribution from Lee's carrier, far removed from the soaring arguments of counsel.

Where this Court has established a precedent, as in *Small v. Morrison*, which deprives a recognized segment of our society of its just rights, it should not hesitate to remedy its own wrongs. Such is not judicial legislation, but judicial enlightenment.

"Suffer the little children to come unto me . . . ." Mark 10:14. Surely, this Court can do no less.

Justice EXUM dissenting.

It would be difficult to mount a more persuasive argument for the judicial abrogation of the doctrine of parental immunity in tort actions such as this one, not involving the exercise of parental authority over a child or the exercise of those actions inherent in the parent-child relationship, than that mounted by Judge Becton in his dissent in this case in the Court of Appeals.

This case, however, does not require us to face the question whether the much-criticized doctrine should be abrogated altogether. This is not an action by a child against the child's parent. This is a third-party claim brought by Mowett Sales Company, Inc., as defendant and third-party plaintiff, against Lee, the plaintiff's parent, for contribution in the plaintiff's action against Mowett Sales. None of the policy reasons said to justify parental immunity against ordinary tort actions by children appertain to cross-claims by third-party plaintiffs who are not children of the defendant.

In *Watson v. Nichols*, 270 N.C. 733, 735, 155 S.E. 2d 154, 156 (1976), relied on by the majority, the Court, without citing any authority and without any analysis of the issue, said simply, "Since the parent is not liable in a direct action against him, he cannot be made liable by cross-action." To me this is an unwar-

ranted extension of the parental immunity doctrine in a situation to which none of the policy reasons said to justify the doctrine appertain. *Watson* did not nor does this case involve an action by the child against the parent. Both are actions by the child against third parties over which the child, of course, has no control. Such actions for contribution, or even indemnity, by third parties against the plaintiff's parents do not adversely implicate harmonious family relations, the maintenance of which is said to be the policy underlying the parental immunity doctrine.

Without, then, going so far as to abolish the doctrine, I would hold simply that the doctrine should not be *extended* to preclude the maintenance of Mowett Sales Company's cross-action against Lee, the plaintiff's parent, in this case. Insofar as *Watson* holds to the contrary, I would vote to overrule it.