Kenneth SCHLESSINGER, Petitioner,

v.

Nicholas SCHLESSINGER, By and Through his Next Friend and Mother, Cynthia SCHLESSINGER, Respondent.

No. 89SC401.

Supreme Court of Colorado, En Banc.

Sept. 10, 1990.

Hall & Evans, Alan Epstein, Eugene O. Daniels, Denver, for petitioner.

The Law Firm of Chris Melonakis, Chris Melonakis, Northglenn, for respondent.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether an unemancipated minor can maintain an action against a parent for personal injuries sustained by the child in an automobile accident allegedly caused by the parent's negligent operation of the automobile. In *Schlessinger v. Schlessinger*, 781 P.2d 117 (Colo.App.1989), the court of appeals held that the Colorado Auto Accident Reparations Act (Auto Accident Reparations Act), §§ 10–4–701 to –723, 4A C.R.S. (1987 & 1989 Supp.), effectively abolished the parental immunity doctrine in cases in which the child is injured due to the parent's negligent operation of an automobile and that, consequently, the district court erred in dismissing the child's claim against the parent. We reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of dismissal entered by the district court.

I.

On or about October 20, 1984, a vehicle owned and operated by Kenneth Schlessinger (father or parent) collided with a vehicle owned and operated by Kimberly Beth Georgen on Colorado Highway 36. At the time of the collision Nicholas Schlessinger (child) was six years old and was riding as a passenger in his father's auto-

mobile. The child, by and through his next friend and mother, filed a complaint in the district court against the father and the other driver, Kimberly Georgen. The complaint alleged that the combined negligence of the father and Georgen caused serious bodily injury and permanent brain damage to the child. The child's claim against the father was limited to simple negligence and did not allege that the parent engaged in willful and wanton or intentional misconduct or that the accident occurred while the parent was engaged in a business or employment activity. The child, through his mother and next friend, settled the claim against Georgen, and Georgen was dismissed from the lawsuit.

The father filed a motion to dismiss the complaint on the basis of the doctrine of parental immunity. The district court dismissed the case with prejudice, ruling that under the doctrine of parental immunity " 'liability of a parent can be predicated only upon willful and wanton misconduct' " (quoting *Horton v. Reaves,* 186 Colo. 149, 156, 526 P.2d 304, 308 (1974)), or " 'where the injuries are inflicted by the parent in the performance of duties relating to business as distinguished from parental duties' " (quoting *Trevarton v. Trevarton,* 151 Colo. 418, 423, 378 P.2d 640, 643 (1963)).

The child appealed and the court of appeals reversed the judgment of dismissal. Relying on the Auto Accident Reparations Act's legislative declaration of purpose to avoid inadequate compensation to victims of automobile accidents by requiring motor vehicle owners to purchase insurance policies providing for both liability and personal injury protection benefits, and further relying on this court's decision in *Meyer v. State Farm Mutual Automobile Insurance Co.,* 689 P.2d 585 (Colo.1984), which held that household exclusion clauses in automobile liability policies were void as contrary to the purpose of the Auto Accident Reparations Act, the court of appeals concluded that the dismissal of the child's claim on the basis of the parental immunity doctrine would be contrary to the legislative purpose underlying the statutory scheme. We granted the parent's petition for certiorari to consider whether the court of appeals correctly determined that the Auto Accident Reparations Act abrogates the parental immunity doctrine where, as here, the child's claim sounds in simple negligence and requests money damages for personal injuries allegedly caused by the parent's operation of a motor vehicle during an activity unrelated to the parent's business or employment.

## II.

The parental immunity doctrine was first articulated in 1891 by the Mississippi Supreme Court in *Hewellette v. George,* 68 Miss. 703, 9 So. 885 (1891), which involved a child's claim for false imprisonment against her mother for maliciously committing the child to an insane asylum. In refusing to recognize the child's claim, the court stated that "[t]he peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim ... for personal injuries suffered at the hands of the parent." 68 Miss. at 711, 9 So. at 887. Since that decision, courts have addressed the cognizability of a child's claim against a parent in various ways. Some courts adhere to an unqualified rule of parental immunity, *e.g., Owens v. Auto Mutual Indemnity Co.,* 235 Ala. 9, 177 So. 133 (1937); *Horton v. Unigard Ins. Co.,* 355 So.2d 154 (Fla.Dist.Ct.App.1978), *cert. dismissed,* 373 So.2d 459 (Fla.1979); *McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521 (Miss.1971), while others have abolished the doctrine entirely, *e.g., Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109 (1980); *Wood v. Wood,* 135 Vt. 119, 370 A.2d 191 (1977). Still others have adopted exceptions to the immunity doctrine or have limited its applicability to specific situations. *E.g., Cummings v. Jackson,* 57 Ill.App.3d 68, 14 Ill. Dec. 848, 372 N.E.2d 1127 (1978) (parental

immunity retained with respect to conduct arising out of family relationship and connected with family purpose); *Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145 (1983) (parental immunity doctrine bars suit by child for parent's negligent supervision, but does not protect parent from claim of willful or wanton misconduct); *Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971) (no parental immunity in conduct arising out of business activities of parent).

Courts adopting some form of parental immunity have advanced several reasons in support of the doctrine. These reasons usually include the following: the maintenance of family harmony and tranquility, *see, e.g., Begley v. Kohl and Madden Printing Ink Co.*, 157 Conn. 445, 254 A.2d 907 (1969); the preservation of legitimate parental authority and control of the children, *see, e.g., Barlow v. Iblings*, 261 Iowa 713, 156 N.W.2d 105 (1968); the prevention of fraudulent or collusive suits between family members, especially when the parent is covered by liability insurance, *see, e.g., Skinner v. Whitley*, 281 N.C. 476, 189 S.E.2d 230 (1972); and the safeguarding of family assets lest they be depleted in favor of one child at the expense of other children, *see, e.g., Orefice v. Albert*, 237 So.2d 142 (Fla.1970).

In 1963 we adopted a rule of qualified parental immunity in our decision in *Trevarton v. Trevarton*, 151 Colo. 418, 378 P.2d 640 (1963). At issue in that case was whether a minor child could recover damages from his father for personal injuries resulting from the father's alleged negligence in permitting a fallen tree to be dragged across his son while the father was engaged in cutting, felling, and loading trees in the course of his business or employment. Acknowledging the various reasons offered in support of the parental immunity doctrine, we rejected a rule of absolute immunity and held that when a parent causes injury to a child in the performance of business or employment duties, there is no valid reason to deny the child a remedy in tort for the parent's negligence. The rationale for the "business or employment" exception to parental immunity is that a person's business or employment activities usually are sufficiently separate and distinct from the person's role as parent and, as such, deserve no special protection under the mantle of parental immunity. *See generally Borst v. Borst*, 41 Wash.2d 642, 251 P.2d 149 (1952). Moreover, in light of the fact that a child generally may assert a cognizable claim against a parent in matters pertaining to contract or property rights, H. Clark, *Law of Domestic Relations*, § 11.2, at 640 (2nd ed.1987); W. Prosser & R. Keeton, *The Law of Torts* § 122, at 904 (5th ed.1984), there seems to be little reason to preclude a child's claim against a parent for injuries arising out of occupational pursuits which are unrelated to and exist independently of the parental relationship.

We again had occasion to apply the parental immunity doctrine in *Horton v. Reaves*, 186 Colo. 149, 526 P.2d 304 (1974). In that case a young child, through a legal guardian, sued the mother in negligence for injuries suffered by the child in a fall from a bed where the child had been placed and left unattended for two and one-half hours. In upholding the trial court's dismissal of the child's claim in simple negligence against the mother, we concluded that the liability of a parent can be predicated on "willful and wanton" misconduct but not simple negligence. The reason for upholding the parental immunity doctrine in cases of simple negligence was cogently articulated by the New Jersey Supreme Court in *Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145. The court there observed that although it is both the duty and the privilege of parents to determine "how the physical, moral, emotional, and intellectual growth of their children can best be promoted," the fact remains that there is no "recognized correct theory on how much freedom a parent should allow his or her children," nor is there any "one ideal 'formula' for how much supervision the child should receive at a given age." 93 N.J. at 546, 461 A.2d at 1152. What may be perfectly safe to entrust to one child, in other words, may be utterly dangerous in the hands of another, and the intangibles that often come to bear upon parental decision-

making ordinarily cannot be either conveyed or properly assessed within the formal atmosphere of a courtroom without supplanting the parent's own child-rearing philosophy. *Id.* In contrast to simple negligence, however, willful and wanton misconduct involves a purposeful act or omission which the actor should have realized was dangerous to another but nonetheless was committed recklessly and without regard to the other's safety. *See generally Steeves v. Smiley,* 144 Colo. 5, 354 P.2d 1011 (1960). When a parent engages in such misconduct and causes injury to the child, the parent's behavior no longer is simply a failure to use reasonable care, but rather takes on a character which the law is unwilling to tolerate and becomes a matter of public concern. *Foldi,* 461 A.2d at 1153; *see Hoffman v. Tracy,* 67 Wash.2d 31, 406 P.2d 323 (1965). The same holds true for acts of intentional misconduct that cause injuries to a child.

It is against this legal backdrop that we turn to the question before us—that is, whether the Auto Accident Reparations Act has abrogated the parental immunity doctrine in a case in which a child sues a parent for personal injuries allegedly caused by the parent's operation of an automobile while engaged in an activity unrelated to the parent's business or employment.

### III.

 In holding that the Auto Accident Reparations Act rendered the parental immunity doctrine inapplicable to the child's claim against the parent, the court of appeals placed substantial reliance on this court's decision in *Meyer,* 689 P.2d 585, which invalidated household exclusion clauses in automobile liability policies as contrary to the legislative declaration of purpose in the Auto Accident Reparations Act. We conclude that the Auto Accident Reparations Act has not abrogated the parental immunity doctrine in cases where the child sues a parent for injuries caused by the parent's alleged negligence in operating a motor vehicle during an activity unrelated to the parent's business or employment. Several reasons support this conclusion.

We initially note that *Meyer* is not dispositive on the issue raised in this case. In *Meyer,* we considered the validity of household exclusion clauses in three factual situations not involving the parental immunity doctrine.[1] The household exclusion clauses in *Meyer* basically provided that automobile liability coverage did not extend to bodily injuries sustained by the insured or any member of the same household as the insured. After noting that the Auto Accident Reparations Act requires motor vehicle owners to purchase both compulsory liability coverage, § 10–4–706(1)(a), 4A C.R.S. (1987),[2] and personal injury protection benefits without regard to fault, § 10–4–706(1)(b), 4A C.R.S. (1987),[3] we held that the household exclusion clauses effec-

---

1. One of the claims in *Meyer* arose out of injuries to a mother while she was riding as a passenger in a motor vehicle operated by her adult son, who was the named insured under the policy. Another claim involved personal injuries to a wife, who was a named insured with her husband, while she was riding as a passenger in an automobile operated by her husband. The third claim in *Meyer* was based on injuries to a named insured while riding as a passenger in her own automobile.

2. Section 10–4–706(1)(a), 4A C.R.S. (1987), sets forth the minimum coverages for automobile liability insurance as follows:
 Legal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of twenty-five thousand dollars to any one person in any one accident and fifty thousand dollars to all persons in any one acci-

dent, and for property damage arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of fifteen thousand dollars in any one accident.

3. Section 10–4–706(1)(b), 4A C.R.S. (1987), sets forth the following PIP (Personal Injury Protection) mandatory coverages for compliance with the No Fault Act:
 Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical, chiropractic, optometric, podiatric, hospital, nursing, X-ray, dental, surgical, ambulance, and prosthetic services, and non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing, performed within five years after the accident for bodily injury arising out of

tively rendered the drivers of the vehicles "uninsured" and "in violation of the legislatively mandated public policy of compulsory liability insurance required by the [Auto Accident Reparations] Act." 689 P.2d at 589. In arriving at that decision, we attributed controlling significance to the legislative declaration of purpose in section 10–4–702 of the Auto Accident Reparations Act, which is "to avoid inadequate compensation to victims of automobile accidents ·... [by requiring] registrants of motor vehicles ... to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing [personal injury protection] benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles."

For purposes of the issue before us in this case, we consider it equally significant that the General Assembly legislatively repealed the *Meyer* decision in 1986, by enacting section 10–4–418(2)(b), 4A C.R.S. (1987), which states:

> The commissioner [of insurance] shall not find that a policy form, certificate, or contract of insurance or rider does not comply with the applicable requirements and standards of this title on the ground that it excludes coverage of claims made by a member of a household against another member of the same household. *Such exclusions are in conformity with the public policy of this state.* (Emphasis added).

Ch. 83, sec. 5, § 10–4–418, 1986 Colo.Sess. Laws, at 580–81. The title to which this statute refers is title 10, which deals with insurance and of which the Auto Accident Reparations Act is a significant part. In our view, the General Assembly's enactment of section 10–4–418(2)(b) is a clear signal that this court's interpretation of the legislative declaration of purpose in the Auto Accident Reparations Act did not correspond to the purpose actually intended by the General Assembly. Given the General Assembly's determination that the public policy underlying the Auto Accident

Reparations Act was not intended to abrogate the household exclusion clause in automobile liability policies, we fail to see how, under the aegis of statutory construction, we responsibly can derive from the act a legislative intent to repeal the parental immunity doctrine. To engraft such an interpretation onto the statutory scheme would constitute nothing less than judicial legislation, and we refuse to pursue such a course.

■ We also attach some significance to the multiple reasons underlying the parental immunity doctrine. In contrast to the household exclusion provision in *Meyer*, which we viewed basically as a safeguard against fraudulent or collusive lawsuits between family members, 689 P.2d at 591, the parental immunity doctrine is founded on several additional policy considerations. These considerations include the preservation of family harmony, the maintenance of legitimate parental authority and control, and the safeguarding of family assets by protecting against asset depletion resulting from a judgment in favor of the child against the parent. We outlined these considerations in adopting a limited rule of parental immunity in *Trevarton*, 151 Colo. at 421, 378 P.2d at 641–42, and we view them as offering further support for the conclusion that the Auto Accident Reparations Act was not intended to abrogate the parental immunity doctrine in cases arising out of a parent's negligent operation of a motor vehicle.

Also supportive of our conclusion is the fact that the Auto Accident Reparations Act, which was made applicable to automobile accidents occurring on or after April 1, 1974, § 10–4–723, 4A C.R.S. (1987), was enacted at a time subsequent to our 1963 decision in *Trevarton*. We must presume, therefore, that the General Assembly in enacting this legislation was aware of the *Trevarton* decision, *see Rauschenberger v. Radetsky*, 745 P.2d 640, 643 (Colo.1987); *People v. Green*, 734 P.2d 616, 621 (Colo.

the use or operation of a motor vehicle; except that there shall be offered to the insured, for the named insured and relatives of the named insured who reside in the same house-

hold as the named insured, at the option of the named insured, deductible provisions of one hundred dollars.

1987), and chose not to provide an exception to parental immunity in cases involving injuries to children resulting from a parent's negligent operation of a motor vehicle.[4] In light of the General Assembly's decision not to address the issue of parental immunity in the Auto Accident Reparations Act, we decline to read such an exception into the statute.

In reaching this decision, we recognize that some courts have limited the parental immunity doctrine to parental behavior that is inherent in the parental relationship or is in furtherance of a familial purpose. *See, e.g., Schenk v. Schenk*, 100 Ill.App.2d 199, 241 N.E.2d 12 (1968) (parental immunity doctrine not applicable to daughter's negligence in striking father-pedestrian with automobile, since parental conduct did not involve a "duty arising out of the family relationship" or "any enterprise having for its purpose the furtherance of the family relationship"); *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963) (parental immunity retained only where parental negligence involves exercise of parental authority over child or parental discretion in matters regarding food, clothing, housing, medical and dental services, and other care). Such decisions, however, in addition to offering little guidance to parents in the exercise of their parental responsibilities, invite confusion and uncertainty in the resolution of legal disputes. It is virtually impossible in today's complex society to categorize with any degree of precision those activities which are at the core of the parental relationship from those that are not, just as it is equally difficult to identify those activities which are uniquely familial in character from those that are not. Our decisions in *Trevarton*, 151 Colo. 418, 378 P.2d 640, and *Reaves*, 186 Colo. 149, 526 P.2d 304, make clear that what is of legal significance in determining the cognizability of a child's tort claim against a parent is whether the claim is based on willful and wanton or intentional misconduct or arises out of the parent's pursuit of business or employment activities. Although this standard admittedly is far from a perfect solution to this complex problem, it does offer a measure of practicable guidance on the question of parental liability. Moreover, such standard, in addition to providing legal redress for egregious parental misconduct and even for negligent conduct separate and distinct from the parental relationship, contributes to uniform application in what otherwise could develop into a confusing state of affairs for parents, children, and the courts.

We also are not unmindful of the argument that there is no need for the parental immunity doctrine when the parent is covered by liability insurance, since such insurance will safeguard family assets from any judgment and thus preserve domestic tranquility. This argument, of course, assumes that the judgment against the parent will be within the limits of insurance coverage—an assumption that may not be true in all cases. Assuming, however, that the existence of liability insurance will safeguard the family finances from a liability judgment, the "liability insurance" argument does not address some of the other effects that a child's claim may have on the family relationship. In *Mathis v. Ammons*, 453 F.Supp. 1033, 1036–37 (E.D. Tenn.1978), the court described some of these effects as follows:

> The existence of liability insurance does not remove the obligation of the parent to cooperate with the insurer, an obligation which will often place a parent who is seeking honestly to cooperate, and his child, in adversary roles.... Assuming, for example, that there are differing versions of the facts of an accident, the public display of disagreement and accusation can only weaken the bond between parent and child. In such a situation, the parent's obligation to the insurer cannot be "faithfully complied with without disturbing the family relationship which the policy of the law seeks to preserve...."

---

**4.** Some states have legislated that the parental immunity doctrine does not apply to a child's claim against a parent for negligently operating a motor vehicle and causing injuries to the child. *E.g.,* Conn.Gen.Stat. § 52–572(c) (1989); N.C.Gen.Stat. § 1–539.21 (1983 & 1989 Cum. Supp.).

The parent may find himself forced to choose between his child's interests and his obligations to the courts. For this reason, 'The existence of liability insurance does not remove the inherent danger of the destruction of the parent-child relationship" inherent in the setting of a tort action. (Citations omitted).

We agree with these observations.

As may be gleaned from our discussion, the cognizability of a child's claim for injuries resulting from a parent's negligent operation of an automobile involves a consideration of several competing interests. The tension among these varied interests is particularly pronounced in automobile accidents, which often result in serious injury to victims and account for much of the tort litigation confronting our courts. Because the legislature has addressed the problem of providing compensation to victims of automobile accidents in the Auto Accident Reparations Act, we believe the problem of determining whether the presently existing parental immunity doctrine should be amended so as to permit a child to sue a parent and seek money damages as compensation for injuries sustained by the child as a result of the parent's negligent operation of an automobile can be much more effectively resolved in the legislative arena rather than in a judicial forum. *See Lee v. Colo. Dept. of Health*, 718 P.2d 221, 233–34 (Colo.1986) (cognizability of a child's claim for loss of companionship and support of injured parent involves "problems that are difficult to accommodate within the conceptual framework of tort law" and is best left to legislative resolution); *Lee v. Mowett Sales Co., Inc.*, 316 N.C. 489, 342 S.E.2d 882 (1986) ("If the doctrine [of parental immunity] is to be abolished ... it should be done by legislation and not by the Court"). We thus hold that where, as here, an unemancipated child sues a parent for personal injuries sustained by the child in an automobile accident allegedly caused by the parent's negligent operation of the automobile, and the child's complaint does not allege that the parent engaged in willful and wanton or intentional misconduct or that the parent was pursuing a business or employment activity at the time of the accident, the Auto Accident Reparations Act does not abrogate the parental immunity doctrine with respect to the child's claim. The court of appeals, therefore, erred in reversing the district court's dismissal of the complaint.

The judgment of the court of appeals is reversed and the case is remanded to that court with directions to reinstate the judgment of dismissal entered by the district court.